UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL DOCKET |
| VERSUS | * | NO. 15-289 |
| TIMOTHY WILLIAMS | * | SECTION "N" |

### REPLY IN SUPPORT OF MOTION TO REVIEW AND MODIFY MAGISTRATE JUDGE KNOWLES'S ORDER SUSTAINING THE GOVERNMENT'S MOTION TO QUASH

NOW INTO COURT comes defendant Timothy Williams, who files this Reply to the government's consolidated opposition (Rec. Doc. 104) to Mr. Williams's motion to review and modify the Magistrate Judge Knowles's order sustaining the government's motion to quash as to certain items in Mr. Williams's subpoena *duces tecum* directed towards the St. Bernard Parish Sherriff's Office (SBPSO). As a preliminary matter, since filing Mr. Williams's motion to review and modify Magistrate Judge Knowles's order, undersigned counsel has received documents from the government, which are responsive to the request in item number 6 (documents were received on April 27, 2016). Accordingly, Mr. Williams will withdraw his request for the Court to review Magistrate Judge Knowles's order as it relates to item number 6 in Mr. Williams's subpoena *duces tecum*.

A defendant's constitutional right to compulsory process is at the very center of our adversarial system. As the Supreme Court stated in *United States v. Nixon*:

> We have elected to employ an adversary system of criminal justice in which the parties contest all issues before a court of law. The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence. To ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense.

418 U.S. 683, 708-09 (1974). To ensure that justice is done, this is Court must uphold Mr. Williams's right to compulsory process by modifying Magistrate Judge Knowles's order and

denying the government's motion to quash as to item numbers 10 and 11 in his subpoena *duces tecum* directed towards SBPSO.

## I. Mr. Williams's requests in item numbers 10 and 11 are made in good faith and are not a fishing expedition.

The government's opposition does not dispute that SBPP female inmates who were housed with Nimali Henry during her incarceration will be witnesses against Mr. Williams. *See* Rec. Doc. 104. Magistrate Judge Knowles's order ignores this fact. The sole reason provided in the court's order for finding that Mr. Williams's requests in item numbers 10 and 11 are overbroad is premised on the assertion that SBPP female inmates are not parties to this or any other litigation. Rec. Doc. 91, at 14. However, the fact that the SBPP female inmates who were housed with Nimali Henry are not parties to this case in the sense that they are not the government nor defendants is immaterial to whether the government's motion to quash as to item numbers 10 and 11 should have been sustained. The materials requested by Mr. Williams in item numbers 10 and 11 are relevant because the SBPP female inmates housed with Nimali Henry will be key witnesses against Mr. Williams and, thus, their credibility and motivations will be central to the case. Additionally, the government offers no support for how the fact that SBPP female inmates are not named defendants or plaintiffs supports the magistrate judge's order sustaining its motion to quash as to item numbers 10 and 11. Magistrate Judge Knowles's order impermissibly disregards the role that SBPP female inmates housed with Nimali Henry will play as witnesses against Mr. Williams, which led to a clearly erroneous conclusion by the court.

Further, the magistrate judge's order includes the conclusory statement that the requests in item numbers 10 and 11 are a fishing expedition, but provides no reasoning to support how or why the court reached that conclusion. Rec. Doc. 91, at 14. The government asserts that Mr. Williams's requests in item numbers 10 and 11 are overbroad and a fishing expedition because he is requesting

all call recordings and all disciplinary records for all female inmates that were ever housed with Nimali Henry. Rec. Doc. 104, at 6. The government makes it seem as though there were hundreds of SBPP female inmates housed with Nimali Henry during her incarceration. Yet, from a review of initial discovery, it appears that the number of SBPP female inmates housed with Nimali Henry was approximately 25. Additionally, if the government provides the defense with a list of SBPP female inmates it intends to call as witnesses at trial, Mr. Williams will easily be able to more narrowly tailor his request to those SBPP female inmates.

Mr. Williams rests on his *ex parte* memorandum as to how item numbers 10 and 11 satisfy the *Nixon* standards. *See United States v. Daniels*, 95 F. Supp. 2d 1160, 1163 (D. Kan. 2000) ("Forcing any defendant to confront the choice between issuing a pretrial subpoena *duces tecum* and disclosing his defense to the government places an unconstitutional limitation on the defendant's right to compulsory process.") (quoting *United States v. Beckford*, 964 F. Supp. 1010, 1030 (E.D. Va. 1997)). The government claims that the problem with *ex parte* filings to justify subpoenas for pretrial production is that the government is then prevented from responding to defendant's arguments in those filings. Rec. Doc. 104, at 6, n.8. However, the government fails to explain why it needs to be privy to the defense's arguments in order to respond. Indeed, the government has been able to review what items are requested in Mr. Williams's subpoena and has been given the opportunity to argue against compliance with Mr. Williams's subpoena. Further, since the government is not the party to which the subpoena is directed and has not indicated that it is in possession of the requested materials, the government presumably cannot provide this Court with any additional insight into the substance of the materials requested and how that might defeat Mr. Williams's arguments.

## II. Allowing Mr. Williams pretrial access to the materials requested in item numbers 10 and 11 of his subpoena *duces tecum* directed to the SBPSO is permissible and necessary to promote judicial efficiency.

The government does not argue that defendants are not entitled to subpoena materials from third parties when the evidentiary value is solely for impeachment. Rather, the crux of the government's opposition appears to rest on the premise that because the admissibility of materials requested in item numbers 10 and 11 is grounded in their value as impeachment evidence, pretrial production is not warranted. *See* Rec. Doc. 104, at 6-10. The government's position is that the production of the impeachment materials requested should only happen after the witness testifies at trial. *See* Rec. Doc. 104, at 6-10. However, the government's position fails to recognize that the impeachment value of some of the materials requested will be evident prior to the witness taking the stand and, as a result, delayed disclosure is not warranted. Additionally, in this case it would be impractical and would cause unnecessary delay at trial to provide the requested materials only after the direct examination of the witness.

As the government acknowledges, there is no controlling Fifth Circuit precedent on this precise issue. Rec. Doc. 104, at 7. The government asserts that the cases cited in Mr. Williams's motion are not applicable to the present situation. *See* Rec. Doc. 104, at 7-9. However, the cases cited by Mr. Williams support the proposition that it is within this Court's discretion to allow pretrial production of the requested materials, which may be used as impeachment, in response to a defendant's subpoena *duces tecum*.

Additionally, the government's analysis of *United States v. Libby*, 432 F. Supp. 2d 26, 31 (D.D.C. 2006), fails to appreciate the court's full holding. Contrary to the government's assertion, the district court in *Libby* found that certain impeachment materials requested in the defendant's subpoena *duces tecum* were procurable by the defendant prior to trial. *Id.* at 42-43. The *Libby* court made a distinction between materials that might arguably become admissible as impeachment after

4

a witness testifies and materials where the impeachment value was evident prior to the witness's testimony. *Id.* Where the impeachment value of the materials requested was clear at the time of the court's ruling prior to trial because no matter what the witness testified to at trial the materials could be used as impeachment and it was inevitable the witness would be called at trial, the court ordered pretrial production. *Id.* at 42-43 ("this Court can fathom no reason to delay the production of these documents to the defendant, as they will undoubtedly be admissible for impeachment.").

Here, like in *Libby*, the impeachment value of the SBPP female inmates' disciplinary records will be evident before the inmate takes the stand. Accordingly, there is no argument for delaying the production of the disciplinary records until after the direct examination of the inmate. While Mr. Williams does not have the certainty that was present in *Libby* regarding which SBPP female inmates will be government witnesses at trial, the government can easily resolve this issue by timely informing the defense and the Court which SBPP female inmates it intends to call as witnesses. Once that disclosure is made, Mr. Williams can further tailor his request for disciplinary records only as to those inmates. Further, pretrial disclosure of inmate disciplinary records is necessary for the defense to conduct any needed follow up investigation and to be able to effectively and efficiently use the materials at trial.

While the impeachment value of an inmate's phone call may be evident before an inmate testifies because it may demonstrate the inmate's bias or improper motivations, it may also be dependent on the inmate's testimony. Yet, this Court should exercise its discretion and allow pretrial disclosure in order to prevent undue delay during trial. Here, it is not the simple case of reviewing a statement and then impeaching the witness with the prior inconsistencies of that statement. It would be labor intensive for the Court to conduct an *in camera* review of inmate phone calls, and then in turn, would cause undue delay during trial if the Court were to only turn over the phone calls after direct examination of the inmate. For the same reasons that early production of Jencks Act

5

materials prior to the start of trial is encouraged and courts have held that the Due Process Clause requires timely disclosure of *Brady* evidence, Mr. Williams must receive the materials requested in item numbers 10 and 11 prior to trial in order to make effective use of the materials and to avoid undue delay during trial. *See, e.g.*, FED. R. CRIM. P. 26.2 advisory committee's note (recognizing the importance of early disclosure of Jencks Act material, noting that Rule 26.2 "is not intended to discourage the practice of voluntary disclosure at an earlier time so as to avoid delays at trial."); *United States v. Licciardi*, 2016 WL 815509, at *2 (E.D. La. 2016) (citing *United States v. McKinney*, 758 F.2d 1036, 1049-50 (5th Cir. 1978)) ("Due process requires that the Government disclose evidence favorable to the accused that is material to guilt or punishment and that such disclosures be made timely in order for a Defendant to make effective use of the information at trial.").

### III. Mr. Williams followed proper procedure in the issuance of the subpoena *duces tecum* directed at SBPSO.

Neither the government nor Mr. Williams objected to Magistrate Judge Knowles's decision to not address whether proper procedures were followed in the issuance of the SBPSO subpoenas. Rec Doc. 91, at 12. Accordingly, that issue is not before this Court. Despite failing to object to Magistrate Judge Knowles's order, the government requests that this court issue an essentially advisory opinion regarding the proper procedure for the issuance of subpoena *duces tecum* going forward. Rec. Doc. 104, at 14. While such an advisory opinion would be improper as the issue is not squarely before this Court,[1] it is also unnecessary as counsel for Mr. Williams followed proper

---

[1] *See United States v. Fruehauf*, 365 U.S. 146, 157 (1961) (noting that "such advance expressions of legal judgment upon issues which remain unfocused because they are not pressed before the Court with that clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument exploring every aspect of a multifaceted situation embracing conflicting and demanding interests, we have consistently refused to give.").

procedure. To the extent this Court is inclined to issue an advisory opinion, as explained in Mr. Williams's opposition to the government's motion to quash (Rec. Doc. 67, at 4-7 ), Mr. Williams respectfully requests that this Court find the process followed by Mr. Williams's in the issuance and service of the SBPSO subpoena *duces tecum* was proper.

Additionally, a simple advisory statement to the SBPSO regarding its ability to voluntary produce materials to the defendants if the SBPSO so chooses may moot Mr. Williams's objections to Magistrate Judge Knowles's order. *See, e.g.*, *United States v. Avalos-Martinez*, 299 F.R.D. 539, 541 (W.D. Tex. 2014) (noting that there was nothing stopping the Government Accountability Office (GAO) from voluntarily disclosing the files to defendant, should it wish to do so, when addressing the Department of Justice's motion to quash the subpoena *duces tecum* directed to the GAO); *In re Martin Marietta Corp.*, 856 F.2d 619, 620-21 (4th Cir. 1988) (where subpoenaed third party voluntarily agreed to produce certain documents under subpoena, those documents were no longer subject to motion to quash).

**IV.     Conclusion.**

For these reasons, and any others that may appear to this Honorable Court, Mr. Williams respectfully requests that this Court modify Magistrate Judge Knowles's order and deny the government's motion to quash as it relates to item numbers 10, and 11 in Mr. Williams's subpoena *duces tecum* directed to the SBPSO.

Respectfully submitted this 6$^h$ day of May, 2016.

                                          CLAUDE J. KELLY
                                        Federal Public Defender

                                        /s/Christen L. Chapman
                                        CHRISTEN L. CHAPMAN
                                        Assistant Federal Public Defender
                                        Hale Boggs Federal Building
                                        500 Poydras Street, Suite 318
                                        New Orleans, Louisiana  70130
                                        Telephone:  (504) 589-7930
                                        La. Bar Roll No. 33770

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2016, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

                               /s/Christen L. Chapman
                               CHRISTEN L. CHAPMAN
                               Assistant Federal Public Defender